# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY KENNEDY REYES,<br><br>               Plaintiff,<br>vs.<br><br>MICHAEL CHERTOFF, SECRETARY, DEPARTMENT OF HOMELAND SECURITY,<br><br>               Defendant. | CASE NO. 05cv1132-BEN (BLM)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br>[Dkt. No. 13] |

## I. INTRODUCTION

Defendant Michael Chertoff, Secretary, Department of Homeland Security moves for summary judgment on Plaintiff Cathy Kennedy Reyes' claims of unlawful employment retaliation under Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. §2000e. Reyes claims two incidents of adverse employment action allegedly taken in retaliation for her prior Equal Employment Opportunity Commission complaints. Having considered all of the evidence in the light most favorable to Plaintiff, the Court finds that Defendant is entitled to summary judgment on Plaintiff's Complaint. Accordingly, Defendant's Motion for Summary Judgment is Granted.

## II. FACTS

Plaintiff began working for the United States Border Patrol in January 1985. Reyes Declaration ¶ 1. In 1991, she began working for the United States Customs Service Canine Unit.

1  Reyes Decl. ¶ 8. In 1994, she became part of the "currency program" in the Canine Unit, working
2  with dogs to detect and identify unlawful importation of cash at the United States - Mexico border.
3  Reyes Decl. ¶ 9. In April 1997, Plaintiff found herself in the middle of a disagreement between
4  managers over the use of overtime. Plaintiff's decision to work overtime at the authorization of one
5  manager despite the override of another manager led to an admonishment by the second manager,[1]
6  followed by Plaintiff's filing of an "EEO complaint."[2] Reyes Decl. ¶10. Plaintiff began to
7  experience workplace difficulties shortly after the April 1997 conflict with management. Reyes
8  Decl. ¶ 12.
9      In August 1998, she was accused of daily improperly crossing against the flow of pedestrian
10 traffic across the United States - Mexico border with her child. Reyes Decl. ¶¶16-19. In early
11 September 1998, Plaintiff received a Letter of Caution from Canine Enforcement Chief, Thomas L.
12 Iverson.[3] Again in mid-September 1998, another Canine Unit employee reported to a supervisor
13 that he had witnessed Plaintiff driving her government vehicle in a dangerous manner. Reyes Decl.
14 ¶21. In October 1998, Plaintiff received another Letter of Caution from Canine Enforcement Chief,
15 Thomas L. Iverson concerning Plaintiff's reckless driving of a government vehicle. Reyes Decl.
16 ¶26; Defendant's Memorandum of Points and Authorities, Exhibit C-9. In December 1998, five
17 Canine Unit Officers signed a letter outlining some 23 areas of serious problems with Plaintiff's
18 work performance and asked for Plaintiff's removal from the midnight team. Reyes Decl. ¶30; *see*
19 *also* Defendant's Memorandum of Points and Authorities, Exhibit D-10. Plaintiff was immediately
20 moved off of the midnight shift to another shift. Reyes Decl. ¶34.
21      Approximately eight months later, in August 1999, Plaintiff and 13 other officers applied

---

23 [1] The incident resulted in a letter in April 1997 from supervisor Frank Urban, reciting, inter
24 alia, "[t]his letter constitutes an Oral Admonishment confirmed in writing for rude boisterous conduct, and quarreling with a supervisor." Defendant's Memorandum of Points and Authorities, Exhibit B-2.

25 [2] Plaintiff does not explain the nature of the EEO complaint. It is assumed for purposes of
26 deciding the summary judgment motion that the compliant was an internal agency Equal Employment Opportunity complaint and would constitute protected activity under 42 U.S.C. §2000e-
27 3(a).

28 [3] The letter concluded by stating, "[t]he Letter of Caution is being issued to correct the situation described above. It is not a formal disciplinary action and will not be retained in you personnel folder." Defendant's Memorandum of Points and Authorities, Exhibit B-13.

for a temporary (90 day) position as a Canine Unit team leader. Plaintiff was not selected. Approximately two years later, near the end of a pregnancy, she requested an inter-office transfer from one location to another. She did not receive the transfer. Plaintiff alleges in her Complaint that these two management decisions were taken in retaliation for her prior protected EEO activity.

### III. LEGAL STANDARDS

#### A. Burden of Proof on Summary Judgment

As noted, Defendant is moving for summary judgment on Plaintiff's claims – claims which Plaintiff would have the burden of proof at trial. Thus, Defendant "is not required to produce evidence showing the absence of a genuine issue of material fact with respect to" the claims. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989), *cert. denied*, 110 S.Ct. 51 (1989). Nor is Defendant required to "support his motion with affidavits or other similar materials negating" the claims. *Id.* at 1543. Rather, Defendant "need only point to shortfalls in the Plaintiff's case to demonstrate the absence of evidence" supporting her claims. *Id.*[4] Defendant may do this by simply pointing to the pleadings and arguing that Plaintiff has failed to establish an element essential to her case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To defeat summary judgment, Plaintiff "must respond with more than mere hearsay and legal conclusions." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (citation omitted). Plaintiff also "must do more than simply show that there is some metaphysical doubt as to the material facts[5]." *Id.* (citation omitted); *see also Matsushita Elec. Industrial Co. v. Zenith*

---

[4] *See also Shawmut Bank, N.A. v. Kress Associates*, 33 F.3d 1477, 1497-1498 (9th Cir. 1994) ("[T]he Supreme Court squarely rejected the idea that the party moving for summary judgment must itself produce evidence if it is to show the absence of a genuine issue of material fact. Rather, the Court held, the moving party's burden on summary judgment may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." (internal quotations and citation omitted)); *Maffei v. Northern Ins. Co. of New York*, 12 F.3d 892, 899 (9th Cir. 1993) ("The moving party must show the absence of a genuine issue concerning any material fact, but it need not produce evidence to do so; it may merely point out to the court the absence of evidence.").

[5] "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

*Radio*, 475 U.S. 574, 586 (1986).  Rather, Plaintiff must come forward with sufficient evidence demonstrating to the Court that there are genuine issues of material fact to be decided at trial.  Fed. R. Civ. P. 56(e).  To do so, Plaintiff "may not rely merely on the unsupported or conclusory allegations of her pleadings."  *Coverdell v. Department of Social and Health Services, State of Wash.*, 834 F.2d 758, 769 (9th Cir. 1987) (citations omitted); *see also Celotex Corp.*, 477 U.S. at 324.  That is, the Plaintiff "may not rest upon the mere allegations or denials of her pleadings," but must respond "by affidavits or . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.  Put differently, the Plaintiff must "present affirmative evidence from which a jury might return a verdict in her favor."  *Phelps Dodge Corp.*, 865 F.2d at 1542 (citation and internal quotation omitted).  And, "a complete failure of proof concerning an essential element of her case necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.

## B.  Elements of a Title VII Retaliation Claim

To establish a *prima facie* retaliation claim under Title VII, a plaintiff must show that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between the protected activity and the employer's action.  *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 506 (9th Cir. 2000).

The anti-retaliation provision does not protect an employee from all retaliation, only retaliation which produces material harm.  In the words of the Supreme Court, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2415 (2006).  Thus, the adverse action must be more than the "normally petty slights" or "minor annoyances that often take place at work and that all employees experience."  *Id.*

As to the causation element, the passing of time between the protected activity and the adverse action makes it more difficult to prove causation.  *Porter v. Cal. Dep't of Corrections,* 419 F.3d 885, 895 (9th Cir. 2005).  Where 10 months separated a plaintiff's termination from her protected activity, temporal proximity alone was insufficient to prove a causal connection between

1  the two.  *Grosz v. The Boeing Company*, 455 F.Supp.2d 1033, 1044 (C.D. Cal. 2006) (citing *Clark
2  County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (*per curiam* ) (finding 20 months
3  separation between protected conduct and transfer insufficient to support a finding of causation on
4  temporal proximity alone) and *Manatt v. Bank of Am., NA,* 339 F.3d 792, 802 (9th Cir.2003) (no
5  retaliation inferred when approximately nine months between the date of complaint and adverse
6  action) and *Vasquez v. County of L.A.,* 349 F.3d 634, 646 (9th Cir.2003) (13-month gap too long));
7  *but see, Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("depending on the
8  circumstances, three to eight months is easily within a time range that can support an inference of
9  retaliation.").  The Ninth Circuit rejects application of a simple bright line rule that a particular
10 period is too long or, conversely, short enough, to imply causation.  *Porter*, 419 F.3d at 895.
11 "Whether an adverse employment action is intended to be retaliatory is a question of fact that must
12 be decided in the light of the timing and the surrounding circumstances."  *Cozalter*, 320 F.3d at
13 978.

## III.  DISCUSSION

15       Plaintiff Reyes has not presented evidence that creates a genuine issue of material fact
16 sufficient: (a) to make out a prima facie case of retaliation; or (b) to suggest that her employer's
17 legitimate reasons were pretextual.  Defendant, on the other hand, has offered uncontroverted
18 evidence of genuine, non-retaliatiory and non-discriminatory reasons for the challenged
19 employment actions.  While Plaintiff has satisfied the first element of a prima facie claim by
20 showing that she had engaged in protected EEO activity in April 1997 (by filing an EEO complaint
21 about overtime pay), she has not presented enough evidence to meet the second element (adverse
22 employment action) or the third element (causation) of a prima facie claim, nor has she identified
23 evidence creating a genuine issue of pretext.

24       The second element requires that the complained-of action be significant enough that it is
25 more than a merely trivial or minor slight.  Specifically, Plaintiff must show that the challenged
26 adverse action "might have dissuaded a reasonable worker from making or supporting a charge of
27 discrimination."  *Burlington Northern & Santa Fe Railway Co.*, 126 S.Ct. at 2415.   Here, there are
28 two adverse actions of which Plaintiff complains.  One is the denial of a temporary, two-week

transfer. The second is the non-selection for a temporary position.

**A. The Temporary Transfer Request Denial**

    1. **The Temporary Transfer Request Denial Is Not Materially Adverse**

The denial of Plaintiff's requested temporary transfer does not constitute an adverse employment action. Plaintiff was working inside an office where she had been placed by management to accommodate her pregnancy-related medical "light-duty" concerns. Defendant's Memorandum of Points and Authorities, Exhibits F-20, F-28. When Plaintiff sought a transfer back to the Canine Unit for the final two weeks of her pregnancy, there was no light duty position available at the location where she desired to work.

Plaintiff has proffered no evidence that would meet the Supreme Court test for material adversity. Plaintiff has not shown that a reasonable employee would be deterred from making a discrimination claim if she knew she would be denied a temporary two-week request, during the last two weeks of a pregnancy, for an inter-office transfer from an inside light-duty position to a more demanding canine border crossing position. Plaintiff's complaint of the denial of a temporary office transfer does not qualify as an adverse employment action for which Title VII liability attaches. *See Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000) (denial of temporary transfer request not an adverse employment action); *see also McGowan v. City of Eufala, Oklahoma*, 472 F.3d 736, 742-43 (10th Cir. 2006) (affirming summary judgment for employer where shift change request was denied and request was for purely personal reasons).

    **2. There is Insufficient Evidence as to Causation to Create a Genuine Issue of Fact**

Even had there been evidence that the action was materially adverse, there is little evidence of a causal connection. While there is no direct evidence, inferential evidence would suffice. While plaintiff does not argue it, the Court notes that a close proximity in time between an EEO complaint and the denial of the transfer request could supply the needed inference of a causal connection. However, the evidence submitted here does not create the needed inference. The lapse of time is too great in light of the surrounding circumstances. Plaintiff requested the transfer in February 2002. The evidence she submits identifies only the April 1997 EEO complaint. Reyes Decl. ¶10. Plaintiff does not identify in her brief or elsewhere any other evidence of EEO

1  complaints.  However, the Court notes among Defendant's exhibits a Reyes' Memorandum to the
2  Office of Equal Employment Opportunity signed September 26, 1999.  Defendant's Memorandum
3  of Points and Authorities, Exhibit D-3 to D-7.

4  Still, 17 months is too great a passage of time to imply causation.  The lack of temporal
5  proximity without some additional circumstance suggesting causation makes it too difficult for
6  Plaintiff to create a genuine issue of material fact.  *Grosz*, 455 F.Supp.2d at1044; *Manatt*, 339 F.3d
7  at 802; *Vasquez,* 349 F.3d at 646; *see also Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 n.3
8  (5th Cir. 1997), *cert. denied*, 118 S.Ct. 396 (1997) ("If timing *alone* were enough any action taken
9  against a plaintiff could be sustained as discriminatory).  Plaintiff simply has not presented
10 sufficient evidence from which a trier of fact could find a causal connection between her
11 complaints and the denial of her temporary transfer request.  Defendant is entitled to summary
12 judgment as to this claim of retaliation.

13 **B.  The Non-Selection for a Temporary Canine Unit Leader Position**

14 In the other instance of alleged retaliation, Plaintiff asserts that she was not selected for a
15 temporary 90-day position as a "Canine Unit Leader," and that other employees who had not filed
16 EEO grievances were treated more favorably that Plaintiff.

17 1. **Non-Selection as Temporary Canine Unit Leader Is Not Materially Adverse**

18 There is insufficient evidence from which to find a genuine issue of fact regarding whether
19 the non-selection for the temporary Canine Unit Leader position constitutes an adverse employment
20 action.  As mentioned above, to be protected under Title VII for retaliation, the complained-of
21 adverse employment action must be significant enough that it is more than a merely trivial or minor
22 slight.  The Supreme Court test for whether the action is materially adverse is whether the
23 challenged adverse action "might have dissuaded a reasonable worker from making or supporting a
24 charge of discrimination."  *Burlington Northern & Santa Fe Railway Co.*, 126 S.Ct. at 2415.

25 In this record, there is no evidence of whether selection for the temporary 90-day leader
26 position would constitute a significant change in employment status such as "significantly different
27 job responsibilities, or a decision causing a significant change in benefits."  *McGowan*, 472 F.3d at
28 742 (decision applying new Supreme Court test).  There is no evidence that the temporary leader

1  position would involve better pay, better hours, better location, better benefits, or more desirable
2  responsibilities and duties.  In the record, there is no evidence at all about the pay, hours, location,
3  benefits, or responsibilities and duties of a temporary Canine Unit Leader position.  Moreover,
4  there is little in the job title itself from which the Court can find an inference that Plaintiff's non-
5  selection constitutes a materially adverse employment action.  "Context matters."  *Burlington*
6  *Northern & Santa Fe Railway Co.*, 126 S.Ct. at 2415.  But there is no context to be gleaned from
7  this record.

8  Thus, Defendant is entitled to summary judgment because Plaintiff has not demonstrated a
9  genuine issue of material fact concerning the second element of a prima facie Title VII case of
10 retaliation, *i.e.*, that the non-selection for the temporary Canine Unit Leader position was a
11 materially adverse employment action.

12 **2. There is Insufficient Causation Evidence to Create a Genuine Issue of Fact**

13 As in the instance of management's denial of Plaintiff's requested temporary transfer, even
14 had there been evidence that the non-selection for the temporary position was materially adverse,
15 there is, once again, insufficient evidence of a causal connection.  There is no direct evidence that
16 the selection of another employee for the position of temporary Canine Unit Leader was an act of
17 employer retaliation for Plaintiff's prior EEO activity.  While inferential evidence would suffice to
18 resist summary judgment, (*Warren v. City of Carlsbad*, 58 F.3d 439, n.1 (9th Cir. 1995), *cert.*
19 *denied*, 116 S.Ct. 1261 (1995) ("A plaintiff can also establish a prima facie case by offering
20 evidence adequate to create an inference that an employment decision was based on a
21 discriminatory criteria illegal under Title VII."), there is not enough in this record to create a
22 material inference of fact to be resolved by a jury.

23 *a. Verbal explanations to employees*

24 Fourteen employees applied for the temporary 90-day Canine Unit Leader position.
25 Defendant's Memorandum of Points and Authorities, Exhibit E-70.  Plaintiff argues in her brief that
26 two facts create the inference of retaliation.  First, Plaintiff argues that the position required a more
27 formal application than in the past and that Plaintiff was not informed while other employees were
28 informed.  Specifically, she argues, "[t]hese requirements were not emphasized in the written

1 memorandum but rather were circulated verbally among other employees." Plaintiff's Points and
2 Authorities in Opposition, at 8.  Plaintiff's own declaration does not support or address this.
3 Moreover, Plaintiff does not cite any evidence to substantiate her argument.  The notice soliciting
4 applications is a written document that on its face required a memorandum addressing seven areas
5 of performance.  Defendant's Memorandum of Points and Authorities, Exhibit E-2.  Plaintiff's
6 memorandum was brief.  It lacked details.  Defendant's Memorandum of Points and Authorities,
7 Exhibit E-10.  Other applicants discussed their job qualifications in great detail.  Defendant's
8 Memorandum of Points and Authorities, Exhibits E-11-64.  Plaintiff's deposition testimony
9 indicates only that she was on vacation at the time the position was posted and that she was notified
10 of the posting, and assisted in the process, by a Canine Unit roommate.  Defendant's Memorandum
11 of Points and Authorities, Exhibit A, at 18:25-19:17.  The Court finds no evidence that others were
12 treated more favorably by retaliating management.  The evidence relied upon is insufficient to raise
13 a triable inference of retaliation.

14         *b. Seniority de-emphasized*

15       Second, Plaintiff argues that seniority was de-emphasized in order to place Plaintiff at a
16 competitive disadvantage.  Once again, Plaintiff's own declaration does not address this and
17 Plaintiff does not cite any other evidence to substantiate her argument.  Defendant, on the other
18 hand, submits the affidavit of James Henderson, Acting Branch Chief, at the time.  He explains that
19 it was he who decided on the seven areas of accomplishment to be scored and based that decision
20 on his military experience.  Defendant's Memorandum of Points and Authorities, Exhibit E-66.  He
21 explains that job seniority was unimportant because of his own work experiences.  *Id.*  He also
22 explains that he scored the applications and that the names of the applicants were "sanitized" so
23 that he was unaware of the identities of the individual applicants.  *Id.*  Plaintiff scored very poorly
24 overall.  Defendant's Memorandum of Points and Authorities, Exhibit E-71.  Tellingly, he also
25 testified that a second round of applications were later solicited for the same type of position and
26 that Plaintiff applied with a more comprehensive application and was selected.  *Id.* at E-67-68;
27 Exhibit H-1-4; Exhibit H-5.  More importantly, he states that he is aware of one individual who was
28 selected during the first round who, like Plaintiff, did have prior EEO activity, thus tending to prove

that EEO retaliation was not a motivating factor. *Id.* at E-68. The evidence presented does not raise a triable inference of causation for unlawful retaliation.

### c. Proximity in time

#### i. A 1997 EEO complaint

Finally, Plaintiff does not rely on the proximity in time between her EEO complaint and her non-selection in August 1999 to supply the needed showing of a causal connection. The evidence she submits identifies only the April 1997 EEO complaint. Reyes Decl. ¶10. Plaintiff does not identify in her brief or elsewhere any other evidence of EEO complaints.

#### ii. A September 1999 complaint

The Court notes among Defendant's exhibits is a Reyes Memorandum to the Office of Equal Employment Opportunity signed September 26, 1999. This complaint appears to have come after the non-selection and thus too late to spark retaliation. Defendant's Memorandum of Points and Authorities, Exhibit D-3 to D-7. Of course, the passage of two years from the 1997 EEO activity is too great a passage of time in light of the circumstances. The lack of temporal proximity makes it too difficult for Plaintiff to create a genuine issue of material fact as to causation. *Grosz*, 455 F.Supp.2d at 1044 ("She cannot prove causation simply by saying that since her termination happened after her complaints, it must have been related to her complaints."); *Manatt,* 339 F.3d at 802 (no retaliation inferred from nine months); *Vasquez,* 349 F.3d at 646 (13-month gap too long); *Swanson*, 110 F.3d 1180 at n.3 (timing *alone* not enough). There is insufficient evidence from which a trier of fact could find a causal connection between her complaints and her non-selection for the temporary 90-day Canine Unit Leader position.

#### iii. A third complaint?

There is evidence of another EEO complaint that deserves mention. It is a form complaint with two different complainant's signatures and two different dates – six months apart. See Defendant's Memorandum of Points and Authorities, Exhibit D-16 to D-18. The signature of Cathy A. Kennedy appears beside a date of May 31, 1999, while on the same signature line the name of Cathy A. Reyes appears beside a date of November 10, 1999. *Id.* Plaintiff does not cite to, nor address the significance of, the document. There is no "received" mark on the document to

1  indicate when it was originally tendered.  If it were tendered in November 1999, it could not raise
2  an inference of retaliation simply because it would have happened after the non-selection action in
3  August 1999.  On the other hand, if it had been tendered in May 1999, and assuming that Kennedy
4  and Reyes are the same individual (and assuming the complaint was re-signed in November, 1999),
5  the complaint together with other circumstances could create an inference of retaliation.  The
6  Achilles Heel of this approach is the lack of other circumstantial evidence.  There is no evidence
7  presented that indicates that any of the Defendant's managers were aware, at the critical time in
8  August 1999, of such a complaint.  *Alexander v. Wisconsin Dept. Of Health & Family Services*, 263
9  F.3d 673, 688 (7th Cir. 2001) (suspension one day after filing of EEO complaint fails to create
10 inference where there was no evidence management involved with suspension had knowledge of
11 complaint); *Wilborn v. Ashcroft*, 222 F.Supp.2d 1192, 1212 (S.D. Cal. 2002) (Gonzalez, CJ.)
12 (summary judgment appropriate where no evidence of personal knowledge of prior EEO activity on
13 part of alleged management retaliator).  Thus, there is no genuine issue of material fact on the issue
14 of causation, and Defendant is entitled to summary judgment on the non-selection retaliation claim.

15 **C.  No Genuine Fact Issue of Pretext Exists**

16      Even if her *prima facie* case was sufficient, Plaintiff's retaliation claims suffer a fatal defect.
17 She has not provided enough evidence to demonstrate that Defendant's legitimate reasons for the
18 two employment actions were pretextual.  *See Hardage v. CBS Broad., Inc.,* 427 F.3d 1177, 1188
19 (9th Cir. 2005) (even assuming causation, summary judgment for employer granted where plaintiff
20 failed to rebut the legitimate reason for giving adverse performance review), *op. amended on denial*
21 *of reh'g and reh'g en banc,* 433 F.3d 672 (2006) and 436 F.3d 1050 (2006), *cert. denied*, 127 S.Ct.
22 55 (2006)..  To establish that a defendant's non-retaliatory explanation is a pretext for unlawful
23 retaliation, a plaintiff may rely on circumstantial evidence.  However, such evidence "must be
24 specific and substantial to create a genuine issue of material fact." *Cornwell v. Electra Central*
25 *Credit Union*, 439 F.3d. 1018, 1029 (9th Cir. 2006).  A plaintiff will not defeat an employer's
26 motion for summary judgment "merely by denying the credibility of the defendant's proffered
27 reason for the challenged employment action." *Id.*  A plaintiff's subjective belief of unlawful
28 retaliation does not, by itself, create a genuine issue of material fact. *Id.*  "Mere conclusory

assertions of discriminatory intent, embodied in affidavits or deposition testimony, cannot be sufficient to avert summary judgment. The court must satisfy itself that there is sufficient direct or circumstantial evidence of intent to create a genuine issue of fact for the jury, before it can deny summary judgment...." *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994).

In this case, there is no specific and substantial evidence of pretext. There is little more than Plaintiff's own conclusory assertions of retaliation embodied in her own declaration and testimony. Instead, the uncontroverted evidentiary picture that emerges from the record submitted is of a fair and even-handed management dealing with an outspoken employee in a non-retaliatory and non-discriminatory manner. The evidence submitted does not create a genuine issue of material fact and Defendant is entitled to summary judgment on Plaintiff's Complaint.

## IV.  CONCLUSION

Defendant's Motion for Summary Judgment is hereby, Granted. It is further Ordered that the Clerk enter Judgment in favor of Defendant and that Plaintiff take nothing. The Clerk shall terminate this case.

DATED: February 28, 2007

Hon. Roger T. Benitez
United States District Judge